**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| HOME DEPOT U.S.A., INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civ. Action No. 14-5531(FLW) |
| v. | : | |
| | : | **OPINION** |
| 724 R202 ASSOCIATES, LLC. AND | : | |
| STEINER EQUITIES GROUP, LLC, | : | |
| | : | |
| Defendants. | : | |
| | : | |

<u>WOLFSON, District Judge</u>:

Plaintiff Home Depot U.S.A., Inc. ("Plaintiff" or "Home Depot") leases a section of a shopping center from Defendants 724 R202 Associates, LLC ("724 Associates") and Steiner Equities Group, LLC ("Steiner") (collectively, "Defendants"). In that lease, the parties agreed to certain indemnification provisions that are the subject of this suit. During the lease period, Plaintiff was embroiled in an underlying state lawsuit brought by General Electric ("GE") to access the leased property for environmental remediation (the "State Environmental Action") directed by the New Jersey Department of Environmental Protection ("NJDEP"). After the conclusion of that case, Plaintiff initiated the instant Complaint, alleging, *inter alia*,[1] that Defendants failed to indemnify Home Depot for litigation costs in connection with the State Environmental Action. In the instant matter, both parties move for summary

---

[1] The majority of Plaintiff's claims in the Complaint against Defendants dealt with a sublease deal with Raymour & Flannigan. Those claims have been resolved.

judgment on the issue of indemnification.  For the reasons set forth below, because there are genuine issues of material fact, both summary judgment motions are **DENIED**.

## BACKGROUND

The following facts are undisputed, unless otherwise noted.  On September 28, 2000, Home Depot and Defendants[2] entered into a 25-year lease agreement (the "Lease") under which Home Depot agreed to lease a building pad in a shopping center located on Route 22 in Bridgewater, New Jersey (the "Property").  Plaintiff's Statement of Undisputed Facts ("Pl's. Facts"), ¶ 1.  GE was formerly the owner of the Property, having acquired it from another entity in or about 1986.[3]  Defendants' Statement of Undisputed Facts ("Defs' Facts"), ¶ 4.  GE's acquisition triggered certain state environmental requirements to remediate the Property.  *Id.* at. ¶ 6.  More specifically, in January 2010, the NJDEP required GE to perform, *inter alia*, sampling and monitoring of the groundwater beneath the leased property. Thereafter, in April 2010, GE sent its first correspondence to Defendants seeking access to the Property to install monitoring equipment.

---

[2]     Defendant 724 Associates is the landlord, and Steiner is the managing agent for 724 Associates.  For the purposes of this motion, I will refer to them collectively as Defendants.

[3]     The record is unclear as to when GE sold the Property to Defendants.  What is clear is that GE remained obligated to remediate the Property throughout the relevant time period of this lawsuit.

Approximately four months later, in August 2010, Defendants sought documentation from GE[4] which would demonstrate that the NJDEP required such remediation, and Defendants also sought clarification from the NJDEP regarding the scope of the work performed.  Defs' Facts,¶ 10.  In September 2010, GE wrote to Defendants seeking access to perform remediation on the exterior of the Shopping Center.  Defendants authorized this access.  *See Id.* at ¶ 11.

In October 2010, GE informed Defendants that the monitoring equipment must be installed on the Property, leased by Home Depot, by late November 2010.  *Id.* at ¶ 13.  When no authorization was provided, on November 3, 2010, GE demanded Defendants to allow access to the Property, and if such access were not granted, GE would seek a summary order from state court compelling access.  *Id.* at ¶ 14.  Notably, in that letter, GE indicated that several prior requests were made, but to no avail. *See* GE's Letter dated November 3, 2010.  GE further indicated that it would bring suit after 30 days if Defendants failed to respond.  *See Id.*  Thereafter, on November 17, 2010, Defendants arranged for a site walk with GE to determine where the monitoring equipment would be installed on the Property.  Defs' Facts, ¶ 15.

According to Defendants, paragraph 18.19 [5] of the Lease required the permission of Home Depot, as the Tenant, to grant GE access to the Property.  Based on that provision, on November 19, 2010, Defendants — for the first time — sought

---

[4]   I note that GE employed ARCADIS and Geosyntee as environmental consultants for the remediation.  *See* Defs' Facts, ¶ 9.  However, to avoid any confusion on this motion, I will simply refer to these entities as GE.

[5]   The language of the Lease will be recounted and discussed, *infra*.

Home Depot's consent permitting GE access to the leased property, and Defendants informed Plaintiff that NJDEP "is pushing hard to begin this work on Monday 11/29/10." *Id.* at ¶ 16.

Around the same time, Home Depot was engaged in negotiations with Raymour & Flannigan to sublease the Property. *See* Plaintiff's Response to Defendants' Statement of Undisputed Facts ("Pl. Response"), ¶ 17. According to Plaintiff, it was concerned that the access for remediation would materially affect its sublease negotiations. *Id.* To assuage these concerns, on January 20, 2011, Home Depot responded to Defendants' request for access by email and forwarded a proposed "Amendment to Lease." *Id.* at ¶ 19. In that email, Home Depot stated that the proposal is "intended to provide [Defendants] with the right to grant GE the rights [it] need[s] to do this work inside the Building at no risk, cost, expense or liability to Home Depot or any subtenant." *See* Dorman's Email dated January 20, 2011. Plaintiff further advised that it "would not want this work or the grant of these rights to cause any issues with the [sublease] deal." *Id.* An agreement was never finalized between the parties. Plaintiff's Statement of Undisputed Facts ("Pl's Facts"), ¶ 21.

While Home Depot and Defendants were discussing issues related to access, on January 19, 2011, GE filed a verified complaint in state court against 724 Associates, seeking access to the Property. Defs' Facts, ¶ 23. GE later amended its complaint to add Home Depot as a defendant based on Defendants' defense that Home Depot, under the Lease, must provide its approval for access. *Id.* at ¶¶ 26-27. Notably, according to Defendants, they did not oppose access in the GE lawsuit. *Id.*

at ¶ 33.  In April 2011, the state court entered an order granting GE access to the Property.  *See* Court Order dated April, 19, 2011.  The state court action was closed by entry of an Amended Order on July 29 2015.[6]  Pl's Facts, ¶ 43.

Based on the indemnification provision in the Lease, each party argues that it is entitled to be indemnified from the other party for the expenses, including substantial attorneys' fees, incurred in the state action brought by GE.  The relevant provision states:

> Environmental Law Compliance.  Tenant (Home Depot) acknowledges that a predecessor in interest to Landlord (Defendants) is currently responsible for remediating environmental contamination which may effect [sic] the Shopping Center and that Landlord has coordinated the remediation work with the responsible party and the New Jersey Department of Environmental Protection.  Landlord agrees that it shall not grant access to the Building and shall restrict access to Tenant's Control Area (including the Property) in connection with such remediation so as to minimize any inconvenience to Tenant's customers and employees and assure that Tenant's business will not be materially adversely affected . . . .  Subject to the Other Lease, Landlord shall indemnify, defend and hold Tenant harmless from all fines, suits, procedures, claims and actions of any kind arising out of or in any way connected with any spills or discharges of hazardous substance or wastes at the Premise or the Shopping Center prior to the Commencement Date ("Indemnification Clause I") . . . .  Landlord and Tenant shall indemnify, defend and hold the other harmless from all fines, suits, procedures, claims and actions of any kind arising out of or in any way connected with any spills or discharges of hazardous substances or wastes at the Premise or the Shopping Center as applicable which are due or attributable to either of them, to Tenant's employees, agents, contractors, vendors, and/or suppliers or to Landlord's employees, agents, and/or contractors, as the case may be, during the Term; and from all fines, suits, procedures, claims and actions of any kind arising out of their failure to provide all information, make all submissions, and take all actions required by the Bureau of

---

[6]   Since the State Court entered its first Order in April 2011, any disputes arising from the remedial work performed by GE have been solely between GE and Home Depot.  *See* Defs' Facts, ¶ 42; Pl's Res., ¶ 42.

Industrial Site Evaluation or any other division of New Jersey Department of Environmental Protection or any other Governmental authority or agency ("Indemnification Clause II").

Lease dated September 28, 2000, Paragraph 18.19.  Needless to say, neither party agreed to indemnify the other, and therefore, this instant suit ensued.

Plaintiff initiated this litigation in July 2014, asserting seven causes of action against Defendants.  In response, Defendants counterclaimed against Plaintiff, which counterclaims include a request for indemnification.  Most of the affirmative claims, and indeed, one counterclaim, are related to disputes between the parties stemming from the sublease with Raymour & Flannigan.  Those claims are resolved.  Count VII of the Complaint and the Second Counterclaim of the Answer concern the indemnification issues that are the subject of the parties' motions for summary judgment.

## DISCUSSION

I.   **Standard of Review**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ .P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *Id.* at 331. On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.* Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Ed. v.*

*Stokley*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

## II.   Indemnification

In New Jersey, construction of an indemnification provision has the same objective as construing any other part of a contract. *Kieffer v. Best Buy*, 205 N.J. 213, 223 (2011).  The court's first task is to determine whether a contractual provision is clear or ambiguous. *Nester v. O'Donnell*, 301 N.J. Super. 198, 210 (App. Div. 1997) (citing *Kaufman v. Provident Life and Cas. Ins. Co.*, 828 F. Supp. 275, 282 (D.N.J.1992), aff'd, 993 F.2d 877 (3d Cir.1993)). "An ambiguity in a contract exists if the terms of the contract are susceptible to at least two reasonable alternative interpretations[.] To determine the meaning of the terms of an agreement by the objective manifestations of the parties' intent, the terms of the contract must be given

their 'plain and ordinary meaning.'" *Id.* (quoting *Kaufman*, 828 F. Supp. at 283). As a general rule, the court should examine the document as a whole and the "court should not torture the language of [a contract] to create ambiguity." *Id.* (citing *Stiefel v. Bayly, Martin & Fay, Inc.*, 242 N.J. Super. 643, 651 (App. Div. 1990)).

In that regard, "where the terms of a contract are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those terms as written." *Schor v. FMS Financial Corp.*, 357 N.J. Super. 185, 191 (App. Div. 2002)(quoting *Kampf v. Franklin Life Ins. Co.*, 33 N.J. 36, 43, 161 A.2d 717 (1960); *Levison v. Weintraub*, 215 N.J. Super. 273, 276 (App. Div.), *cert. denied*, 107 N.J. 650 (1987). The court must refrain from "rewrit[ing] the contract merely because one might conclude that it might well have been functionally desirable to draft it differently." *Id.* at 192; *Brick Tp. Mun. Util. Auth. v. Diversified R.B. & T.*, 171 N.J. Super. 397, 402 (App. Div. 1979). Nor may the court "remake a better contract for the parties than they themselves have seen fit to enter into, or to alter it for the benefit of one party and to the detriment of the other." *Id.*; *James v. Federal Ins. Co.*, 5 N.J. 21, 24 (1950).

Indemnity provisions, including contractual attorneys' fees, differ from provisions in a typical contract in one important aspect: if the meaning of an indemnity provision is ambiguous, the provision is "construed against the indemnitee." *Kieffer*, 205 N.J. at 223 (citing *Ramos v. Browning Ferris Indus. of S. Jersey, Inc.*, 103 N.J. 177, 191 (1986)). The strict-construction approach is taken for two apparent reasons. First, "a party ordinarily is responsible for its own negligence,

and shifting liability to an indemnitor must be accomplished only through express and unequivocal language." *Id.* at 224 (citation omitted). Second, under the American Rule, absent statutory or judicial authority or express contractual language to the contrary, each party is responsible for its own attorney's fees. *Id.* (citation omitted).

Definitionally, the New Jersey Supreme Court has explained that "[a] person who, without personal fault, has become subject to tort liability for the unauthorized and wrongful conduct of another, is entitled to indemnity from the other for expenditures properly made in the discharge of such liability." *Adler's Quality Bakery, Inc. v. Gaseteria, Inc.*, 32 N.J. 55, 80 (1960) (citation omitted). In that regard, indemnity implies primary liability in one party, the indemnitor, and a secondary liability on the part of the indemnitee. *Id.* This concept has been succinctly summed up by the Court:

> The right of indemnity rests upon a difference between the primary and secondary liability of two persons each of whom is made responsible by the law to an injured party. It is a right which enures to a person who, without active fault on his own part, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable.

*Id.*

Based on this legal principle, in New Jersey, the general rule regarding indemnification is that "absent explicit contractual language to the contrary, an indemnitee who has been found to be at least partially at fault may not recover the costs of its defense from an indemnitor." *Mantilla v. Nc Mall Assocs.*, 167 N.J. 262, 264 (2001). Further, absent explicit contractual language, the costs incurred in defending claims of the indemnitee's own negligence must abide by the "after-the-

fact" approach.  *Id.* at 273.  In that regard, "only if the indemnitee is free of active wrongdoing . . . and has tendered the defense to the indemnitor at the start of the litigation, can the indemnitee recover counsel fees and other defense costs." *Nagim v. New Jersey Transit*, 369 N.J. Super. 103, 118 (Law Div. 2003); *Mantilla*, 167 N.J. at 273.

   Here, on its motion, Plaintiff advances two arguments: (1) as a matter of law, Plaintiff should be entitled to indemnification based on the express terms of the Lease; and (2) Defendants' unreasonable delay caused Plaintiff to incur legal expenses.  I will address each, in turn.

   As recited above, in paragraph 18.19 of the Lease, there are two separate indemnification clauses, i.e., Clauses I and II.  Under the first clause, "Landlord shall indemnify, defend and hold Tenant harmless from all fines, suits, procedures, claims and actions of any kind arising out of or in any way connected with any spills or discharges of hazardous substance or wastes at the Premise or the Shopping Center prior to the Commencement Date." Lease, ¶ 18.19.  Based on that language, Plaintiff contends that this provision unambiguously covers the legal costs[7] incurred by Home Depot in defense of the GE litigation, because the state action was commenced against Plaintiff in connection with the clean-up of a discharge of hazardous substances on the Property that took place well before the commencement date of the Lease.  I disagree with Plaintiff's strained reading of Clause I.

---

[7]   The parties do not dispute that the indemnification provision is sufficiently broad to cover legal fees expended in connection with the GE litigation.

The plain language of this clause is clear: Defendants shall indemnify damages that resulted from "any spills or discharges of hazardous substance or wastes" at the Property.  In other words, this provision contemplates a situation in which a third-party claims to have been injured by a hazardous substance discharge or spill, and as a result, a claim against Home Depot was made by that third-party. Indeed, in this case, there has been no evidence presented of any discharge of, and damages resulting from, hazardous materials; as pled and argued here, the monitoring work performed by GE did not arise out of any discharge of harmful substances.  Thus, Plaintiff clearly has no basis to seek indemnification under Clause I, from Defendants, for costs associated with the GE litigation, which suit involved access to the Property for the purposes of installing certain equipment to monitor groundwater vapor conditions.

In the alternative, more appropriately, Plaintiff argues that it is entitled to be indemnified under Clause II, which provides that "Landlord and Tenant shall indemnify, defend and hold the other harmless . . . from all fines, suits, procedures, claims and actions of any kind arising out of their failure to provide all information, make all submissions, and take all actions required by . . . New Jersey Department of Environmental Protection . . . ." Lease, ¶ 18.19.  Plaintiff reasons that Defendants failed to take all necessary actions required by the NJDEP, because they failed for seven months, i.e., from April 2010 to November 2010, to notify Plaintiff regarding GE's request for access.  Plaintiff hypothesizes that if it were notified in a timely manner, there would have been an adequate period time for the parties to negotiate

certain amendments to the Lease that presumably would have allowed GE to gain access without the need for litigation.

Defendants counter that the fault rests with Plaintiff. According to Defendants, they were, at all times, willing and able to grant GE access on any terms that GE proposed, consistent with the relevant New Jersey statute. Defendants argue that, instead, Plaintiff failed to permit GE access to the Property, which failure necessitated the filing of the state court action by GE. In that regard, Defendants claim that they are entitled to indemnification from Plaintiff for costs they incurred from the GE litigation.

The arguments of the parties focus on the dispositive issue underlying indemnification; that is, which party is at fault. The parties, here, do not have the typical indemnitee and indemnitor relationship, because Clause II directs either party to indemnify the other based on the conditions set forth in that Clause. Therefore, the factual inquiry must be made as to whether Home Depot *or* Defendants committed any wrongdoing that precluded the other from fulfilling the obligations under the Lease. Indeed, each party, in its motion, points the finger at the other party for the eventual filing of the GE litigation. Having waded through the evidence, I find that a jury has to make the ultimate factual determination as to which party was the "active wrongdoer," and as such, summary judgment would not be appropriate.

I start with Home Depot's argument of delay. As the record shows, Defendants were informed by GE as early as April 2010, that access was required in order to

13

effectuate the NJDEP's directives.   During that time, Defendants and GE were communicating with each other, and with the NJDEP, regarding the scope of the remediation.  While Defendants permitted GE access to other areas of the Shopping Center, GE did not gain access to the premises of the Property.  Indeed, by November 3, 2010, Defendants received a letter from GE threatening litigation in order to gain access.  Based on the content of that particular letter, there was no indication that GE knew that Plaintiff had the sole authority to grant access. *See* Letter dated November 3, 2010.  In fact, it appears that it was not until the state court litigation that GE learned of that fact.

Defendants also did not notify Plaintiff that GE requested access until November 2010.  This delay, Plaintiff argues, is significant, because there are various liability issues that had to be negotiated between the parties, and in addition, Plaintiff was concerned with the success of the pending sublease deal with Raymour & Flannigan.  Indeed, in an effort to comply with GE's request, Plaintiff submitted a proposed Lease amendment, an agreement to which Defendants did not agree, to protect its rights.  Plaintiff's concerns, however, were not unfounded; multiple lease provisions expressly and implicitly state that Home Depot, as the Tenant, could be liable to Defendants should GE damage the Property as a result of its environmental remediation work. For example, ¶ 9.1 of the Lease directs Plaintiff to maintain the Property in good repair and replace necessary portions of the interior and exterior of the Property, including the foundations and structural portions. *See* Lease, ¶ 9.1.  In addition, paragraph 10.4 provides that Home Depot "agree[s] to indemnify and hold

[Landlord] harmless from and against any and all claims, damages, or causes of action for damages brought on account of injury to any person or persons or property, or loss of life, arising out of the use, operation or maintenance" of the Property.  Lease, ¶ 10.4.  Based on these and other similar provisions in the Lease, Plaintiff was rightfully concerned that it, or any subsequent subtenant, could be faulted for damages to the Property caused by third-parties, *e.g.*, GE, on the premises.  In that connection, Plaintiff's proposed Lease amendment — to which Defendants did not respond —sought to ensure that those Lease provisions related to Plaintiff's liabilities were not triggered by the remediation monitoring work.

Nonetheless, Defendants urge this Court to deem Plaintiff's evidence of negotiation, particularly the proposed amendments, as irrelevant because, Defendants submit, Plaintiff improperly withheld its permission for access in order to procure additional rights that were not part of the Lease.  While certain amendments that Plaintiff proposed went beyond the scope of the Lease, such as holding the subtenant harmless for damages incurred as a result of the remediation, Plaintiff's attempt at negotiating with Defendants was, for the most part, based on legitimate legal concerns.  However, the question whether Plaintiff negotiated in bad faith, could or should have accomplished those negotiations within a timely fashion, or whether this can serve as an excuse for Plaintiff's failure to grant GE access prior to the state court action, are all factual disputes reserved for the factfinder.

Defendants, on the other hand, paint a different picture.  The gravamen of Defendants' argument is that, pursuant to the Lease, Home Depot was the party in

control of the Property, and therefore, the only party responsible for denying GE access.  Indeed, Defendants took the position prior to, and during, the GE litigation that they were ready to comply with GE's request. Simply put, Defendants maintain that Home Depot is the "active wrongdoer" based on its refusal, regardless whether Defendants negotiated with Home Depot on various liability issues.  But, there are countervailing considerations.  As I have discussed earlier, Plaintiff puts the blame squarely on Defendants because of their initial delay in notifying Plaintiff.  Plaintiff insists — and Defendants dispute — that with adequate notice, Home Depot could have granted GE access prior to the state court action.  In addition, Plaintiff claims that Defendants' refusal to negotiate with Home Depot further demonstrates Defendants' own bad faith.  This back-and-forth and blame-shifting create genuine issues of material fact; a jury is entitled to weigh the evidence in that regard, and make the determination as to who was at fault.

## CONCLUSION

For the foregoing reasons, both motions for summary judgment filed by Plaintiff and Defendants are **DENIED**.


DATED: October 25, 2016                                   /s/ Freda L. Wolfson
                                                          Freda L. Wolfson
                                                          U.S. District Judge